[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION 
Review of the File
This matter first came to the court by virtue of summons and complaint dated October 27, 1999 and returnable November 30, 1999, in which complaint the plaintiff petitioner sought a dissolution of the marriage, alimony, custody, child support, an equitable property settlement, an assignment of the defendant's estate in and to the jointly owned real estate located at 675 Shewville Road, Ledyard, pursuant to the provisions of 46b-81 and such other equitable relief as the court deems appropriate. CT Page 484
The usual automatic orders accompanied the complaint.
A motion for joint custody and support pendente lite and a motion for alimony pendente lite accompanied the complaint and in due course the return of the sheriff was filed November 4, 1999.
On November 17, 1999 the defendant filed a pro se appearance.
Subsequently on December 2, 1999 counsel appeared for the defendant and on the same date the defendant filed an answer to the complaint and a cross complaint, and in the cross complaint the defendant claimed a dissolution of the marriage, custody of the minor child, support of the minor child, alimony, an equitable division of the marital assets and such other relief as the court finds equitable.
On December 13, 1999 an agreement was executed by the plaintiff and the defendant and their respective attorneys and said agreement was accepted by the court and entered as orders by Kenefick, J.
The agreement in part provided for joint legal and physical custody of the minor child, a provision whereby the defendant shall pay two-thirds of marital bills, the plaintiff shall pay one-third of the marital bills without prejudice.
On January 21, 2000 the defendant filed a motion to modify the pendente lite financial orders. It does not appear that that motion was acted upon.
On March 16, 2000 the defendant filed a motion to compel and certain sanctions. It does not appear that that motion was acted on.
On May 8, 2000 the plaintiff filed a motion for exclusive use and possession of the family residence pendente lite. It does not appear that that motion was acted on.
On May 16, 2000 the defendant filed a motion to modify pendente lite. It does not appear that that motion was acted upon.
On May 22, 2000 the plaintiff filed a motion for contempt as concerns the defendant's alleged failure to abide by earlier agreement and order of the court. It does not appear that that motion was acted upon.
On June 27, 2000 the plaintiff filed an application for relief from abuse with affidavit attendant thereto. CT Page 485
On June 23, 2000 the plaintiff filed a motion for the appointment of an attorney for the minor child which motion was granted by the court, Dyer, J.
On July 10, 2000 the parties executed an agreement which was approved by the court, Dyer, J., modifying prior financial orders.
On July 24, 2000 there was filed a certain agreement executed by the parties and counsel incident to which the defendant agreed to cure an arrearage of $909.50 and an agreement by the parties to participate in the Early Intervention Program.
On August 14, 2000 the plaintiff filed a motion to modify pendente lite which was subsequently the subject of an agreement dated September 18, 2000 by the court, Kenefick, J.
On September 5, 2000 new counsel appeared for the plaintiff
The September 18, 2000 agreement provided for the defendant paying $155.00 per week as child support and established percentages with regard to unreimbursed medical expenses.
The agreement also provided for the plaintiff being responsible for all household expenses including the mortgage, taxes and so forth provided for the vacating of the premises by the defendant by a date certain.
Said agreement had an attachment sheet appended thereto which set forth various and sundry items of personal property, furnishings and so forth that the defendant was to be entitled to remove from the 675 Shewville Road property.
On September 13, 2000 there was filed with the court an agreement authored by Sharon F. Kesten, Family Relations Counselor, having to do with custody as to the minor child Patrick.
On October 16, 2000 the defendant filed a motion for return of personal property.
On October 23, 2000 the defendant filed a motion for permission to purchase the subject residence.
On December 1, 2000, December 12, 2000 and December 13, 2000 the plaintiff and the defendant with their respective attorneys and witnesses appeared before the court and the matter was heard to a conclusion.
The attorney earlier appointed for the minor child was not present CT Page 486 during the proceedings mindful of the agreement that the parties had come to as concerns custody.
The Court makes the following findings of fact. 
The plaintiff's maiden name was Bethany Gates.
The parties were joined in marriage at Saratoga Springs, New York on November 14, 1987.
Both parties have been residents of this state for more than one year prior to the initiation of the present proceedings.
There is one minor child issue of this marriage whose name is Patrick Stout horn November 13, 1995.
No other minor children have been born to the plaintiff wife since the date of the marriage to the present time.
Neither party has been the recipient of state aid or assistance nor have they received any assistance from any town, city, municipality or subdivision thereof.
The marriage between the parties has irretrievably broken down and there is no reasonable prospect for reconciliation.
The plaintiff testified that at the time of the marriage or shortly thereafter that the defendant's consumption of alcohol was modest but that as time progressed, in her view, it became excessive insofar as the defendant's consumption of beer or wine and that the defendant's condition after imbibing on spirits became aggravating and resulted in her being mentally abused.
The plaintiff according to her testimony endeavored to restrain the defendant from excessive drinking but was met with the proposition that she was merely to put up with it. The plaintiff testified that the defendant's response to her complaints as to the use of spirits was to the effect "if you don't like it, get a divorce".
The plaintiff's testimony was to the effect that the defendant's consumption of alcohol increased substantially after the birth of the child Patrick.
Three years ago, according to the plaintiff's testimony, the defendant told her that if she filed for a dissolution of the marriage that he would do away with her or whoever she was with. CT Page 487
The plaintiff's testimony was to the effect that the defendant engaged in loud and tumultuous speech to her.
The plaintiff's testimony was to the effect that the defendant complained as concerns her involvement with horses, animals with which she had been involved with for most of her life. The plaintiff has a horse at this time.
The plaintiff submitted certain photographs to the court, which will be touched on later in the memorandum, wherein she claimed in March of this year that she counted 268 bottles or cans formerly containing spirits which were accumulated at the residence during a period of 1-1/2 months.
Earlier in the marriage the parties had resided in an apartment in Saratoga Springs and at one time had a condominium in Clifton Park, New York. Incident to the condominium purchase, the plaintiff put down $24,000.00 as a down payment. These funds came from the plaintiff's stepmother and father.
The plaintiff's testimony was to the effect that the defendant did not contribute financially with regard to the condominium purchase and that all the funds incident thereto came from her stepmother or her father. The condominium was subsequently sold at a loss. The purchase price had been $71,150.00. It was sold for $56,500.00.
The plaintiff's present residence is on Shewville Road in the town of Ledyard. The property now occupied by the plaintiff and formerly by the parties together in Ledyard was given to the plaintiff and the defendant initially from the plaintiff's stepmother and father. The property originally had belonged to the plaintiff's grandfather and in 1973 the property was subdivided between the plaintiff and the plaintiff's brother. There was no residence on it at that time except for a shack, which the plaintiff's grandfather had occupied apparently from time to time.
Subsequently a residence was constructed on the parcel set out to the plaintiff. An appraisal of this property was submitted to the court as an exhibit and will be touched on later in the memorandum.
In addition to the costs, mortgage arrangements and so forth attendant to the building of the home, subsequently a loan entitled "A Taxsaver Loan" for $24,000.00 was taken out which was used to pay off credit card debt and to permit the building of a barn on the subject premises.
There was testimony with regard to various and sundry tools including a CT Page 488 table saw, a joiner, a drill press, a router and bits, sanders and miscellaneous clamps and allied items which the plaintiff claimed she wished to keep and retain incident to finishing the barn project.
The plaintiff's testimony was to the effect that originally about $3,500.00 ± was used from the second mortgage to buy the aforementioned tools.
According to the plaintiff's testimony the monthly payments on the second encumbrance on the property is to the amount of $591.00.
In September of 1998 the residence was refinanced for $187,500.00.
From the refinance. certain monies went to pay off obligations regarding the barn, $7,257.00; to pay off an obligation as concerns a bedroom set, $1,932.00 and certain tools.
Prior to her present position as a legal secretary, the plaintiff had worked for a New London law firm as a paralegal. The plaintiff is presently employed at a law firm as a legal secretary.
The testimony indicated that the current mortgage on the property was one for 15 years and that the monthly payments thereon, mindful of the relatively short duration of the mortgage term, was $1,977.00 a month, which included taxes.
During the term of the marriage, this being the third marriage for the defendant and the first for the plaintiff, certain checks were written apparently from the joint account of the parties to pay child support obligations of the defendant incident to children of a prior marriage.
The plaintiff has been employed during the entire life of the marriage except for a period of two or three months.
The defendant has been employed during the marriage except for a number of layoffs which have occurred. The defendant's earnings have, while he was gainfully employed, been manifestly in excess of the earnings of the plaintiff.
On the basis of the plaintiff's testimony it appears that her weekly earnings at the time of the marriage were approximately $300.00 a week; the defendant's at that time, $600.00 a week. In 1990 the plaintiff testified that her earnings annually were about $20,000.00 and the defendant's $42,000.00. In 1994 the plaintiff's earnings annually, $27,000.00; the defendant's $47,000.00. In 1996 the plaintiff's earnings annually, $32,000.00; the defendant's $52,000.00. CT Page 489
The plaintiff testified that funds from the joint accounts or from her funds were used to pay support obligations of the defendant as concerns children of prior marriages and that she made these payments because she was concerned that the defendant would not make them, that he would fall into arrears and that there would be contempt proceedings.
Apparently the defendant now has no support obligations other than the child Patrick issue of this present marriage.
It was the plaintiff's testimony that during the marriage and while the defendant was obligated to pay support for children of prior marriages that the sum of $37,336.00 was paid out for that purpose.
The plaintiff claims that the defendant presently is in arrears of outstanding current court orders for support in the amount of $415.00.
The outstanding first mortgage on the home premises apparently are in arrears and have been in arrears or the payments were made in arrears going back to July of 2000.
It was the plaintiff's claim that the reason for the arrearage was the defendant not making the support payments promptly.
The total monthly payments for the first and second mortgage on the property apparently amount to approximately $2,500.00 a month.
The plaintiff resorted to the use of credit cards to secure funds to make the requisite mortgage payments.
It was the plaintiff's claim that her request for alimony was for a period of four or five years until she can get relief with regard to outstanding debt and refinance the existing mortgage or mortgages on the property.
Incident thereto the plaintiff has made inquiry of certain mortgage companies including McCue, People's Bank and other financial institutions.
The plaintiff's testimony was to the effect that she finds it extremely difficult to maintain the mortgage payments on the subject premises.
The plaintiff asked for child support and for medical coverage as allowed for herself and the minor child Patrick.
The plaintiff testified that she makes no claim against the defendant's CT Page 490 existing retirement structure.
The plaintiff testified she has a 1989 motor vehicle and that in March of this year she had surgery on her shoulder.
The plaintiff and the defendant have been separated since September of 2000.
The testimony was to the effect that 3-1/2 years ago the defendant threatened to do away with the plaintiff and that the restraining order earlier adverted to was not pressed to a conclusion.
The plaintiff is concerned that if she is not successful in refinancing the premises that it may be lost.
The plaintiff testified that there are three people who are endeavoring to help and assist her; a friend by the name of Parks and her stepmother and father.
It appears that the plaintiff's friend has provided her with certain monies during the last two months; in one instance to the amount of $1,400.00.
The friend apparently, at least on a part-time basis, resides in the same residence as the plaintiff and the plaintiff acknowledged that there have been incidents of intimacy.
The plaintiff's friend gave her funds in the months of October and November.
The plaintiff's stepmother and father apparently assist her with regard to certain necessities such as groceries and minor financial matters.
It was the plaintiff's claim that the defendant on occasion has stalked her.
At least on one or more occasions the parties attended marriage counseling.
During the recent past the plaintiff felt obligated to sell a snowblower for which she received $500.00 in order to be able to keep the financial ship afloat.
On occasion the plaintiff's friend allows her to use a new motor vehicle and the friend uses her 1989 Oldsmobile. CT Page 491
The plaintiff's friend apparently provides her with certain financial assistance every two weeks.
The plaintiff testified that her father has given her funds to keep the financial ship afloat and that she has used her MBNA credit card for cash advances in the last four or five months.
It appears that there is a good and a strong bond between the defendant and the minor child Patrick according to the testimony presented.
The plaintiff's testimony was to the effect that her stepmother and father are willing to try and assist her financially in order that the Shewville Road home not be lost.
The plaintiff, whose employment at present is in Hartford with a law firm, indicated that she drove the car belonging to a friend because it was safer than her 1989 vehicle for travel of such a distance.
The plaintiff is age 36. She described her health as good. Her education extended through one year in college. The minor child Patrick is now age 5 and according to the testimony is in excellent health and attends kindergarten.
The plaintiff testified that in fact the marriage has irretrievably broken down.
From the testimony of the witness Harry Gates the court finds that he is the father of the plaintiff, that the subject real estate on Shewville Road came from his family and had been purchased in 1966. It was originally a 15-16 acre tract and the witness Gates resides next door to the home of the plaintiff.
Mr. Gates has three children, of which the plaintiff is one, and when the property was subdivided Mr. Gates retained one parcel, gave one parcel to the plaintiff and set aside the remaining parcel for a second child.
The deed from Gates to Stout in fact was to the plaintiff and the defendant jointly; originally, of course, it was just raw land on which the home was subsequently built.
The testimony was to the effect that the form of the deed was dictated by the fact that the plaintiff on her own could not secure a mortgage and that that was what prompted the conveyance to run to both of the parties. CT Page 492
From the testimony of the witness Carolyn Gates the court finds that the lady is a stepparent to the plaintiff.
Apparently on one occasion the defendant spoke with the witness Carolyn Gates and Harry Gates as concerns problems in the marriage and problems pertaining to the minor child and threatened the witness Carolyn Gates that he would grind the plaintiff into dust in the event that his wishes were not considered and that he did not wish to be "saddled with another mortgage at this point in his life".
From the testimony of the witness Doris V. Finn the court finds that the defendant has resided with her since September of 2000, that the witness Finn and the defendant grew up together and attended school together. The defendant pays the witness rent in the amount of $450.00 a month. The defendant pays the witness for the use of a telephone and for food, $95.00. It appears that the relationship is that of landlord and tenant.
From the testimony of the witness James W. Parks, the court finds that he is acquainted with the plaintiff, that he first met the plaintiff in September of 1999 and that he and the plaintiff have dated since June of 2000.
This witness resides in a mobile home. The witness acknowledged loaning monies to the plaintiff as earlier indicated in the memorandum. Any agreement with regard to paying back is informal. This witness endeavors to do maintenance work for the plaintiff. This witness acknowledged an intimate relationship with the plaintiff since June of 2000.
This witness testified that he has given over his paycheck to the plaintiff for the last four pay intervals for the purpose of helping and assisting her in keeping the mortgage even if in arrears at least to ward off foreclosure.
From the testimony of the witness Ronald Kier the court finds that he is a friend to the witness Harry Gates. He is an examiner for Doncasters Corporation and Turbo Products. He has discussed job prospects with the defendant. The witness apparently told the defendant that he could come to work for Doncasters.
This witness Kier was familiar with the defendant's expertise and background in nondestructive testing and discussed the possibility of a position at Turbo Products with the defendant.
The witness testified that the defendant's reply was that he was desirous of taking the summer off and staying at home. CT Page 493
This witness' employer is an entity known as MDT.
This witness was not in a position of being able to formally offer a position to the defendant; that rested in the hands of an individual by the name of Orlowski.
From the testimony of the defendant the court finds that as concerns a certain Jeep motor vehicle formerly in his position that he transferred that to his son Mitchell, a child issue of an earlier marriage.
The defendant testified that he presently has a new Jeep purchased in October, 2000.
According to his testimony, during the period August through October the defendant was employed.
He testified that he was unemployed in July of 2000, that he had lost a position on June 2, 2000.
The defendant testified as to an obligation to pay certain back taxes to the town of Old Saybrook as concerns motor vehicles.
The defendant testified that on one occasion the plaintiff left their residence for a period of four days and that she had on that occasion taken her car and some clothes.
The defendant denied any physical violence to the plaintiff.
The defendant is desirous of the plaintiff refinancing the subject premises in order that he might be relieved the existing outstanding mortgage debt.
The defendant claims and is desirous of having possession of the aforementioned tools in order that he may put them to use for his own purposes.
The defendant testified that he has taken everything that he was desirous of having from the home except for a certain red chair and his grandfather's tools.
The testimony was to the effect that the plaintiff told the defendant that she had a friend during the period October-December 1999.
On some occasions the defendant apparently followed the plaintiff and took certain photographs. CT Page 494
The plaintiff acknowledged the friendship on October 6, 1999.
The defendant indicated he has no objection to the plaintiff refinancing the premises but does make a request for his share of any equity.
It is the defendant's claim that notwithstanding the fact that he has endeavored to make the requisite court order payments timely that the mortgage payments have nevertheless been made late.
The defendant has been unemployed since mid-October of 2000.
The defendant testified that he has made application to business entities, 25 or more, but has not been accepted as of this date.
The defendant is desirous of remaining in New London County with regard to having an appropriate relationship with his son Patrick.
The defendant testified that he paid and cured an earlier reference to an arrearage of $909.00.
It was the defendant's position that the plaintiff's relationship with her friend was the cause of the breakdown.
The defendant testified that he participated in four or five counseling sessions and that in his mind the counseling sessions were terminated by the plaintiff.
The defendant denied having a drinking problem of any consequence especially with regard to any contacts with the child Patrick.
The defendant also took issue with regard to the plaintiff's claim of his intending to do her harm.
The defendant's position was that the photographs entered with regard to the numerous containers of spirits was the result of an accumulation for a period of over one year and that employees, builders, helpers and so forth who had worked on the property incident to its construction had consumed many of the containers which were shown in the exhibit.
The defendant categorized his position or employment as being designated as a quality assurance engineer.
In the past he has worked at General Electric. He has worked in Windsor Locks, Connecticut. He has worked for NSC Energy Services and ITI. He was CT Page 495 employed at Cramer and Lindell Engineers in 1996-1998 then subsequently at an ITI contract and subsequently for Heeri International and Balfour-Beatty.
It is the defendant's position that he wants his share of any equity that may exist or to have the real estate sold.
The defendant acknowledged that he is presently in arrears with regard to support in the amount of $300.00.
The defendant is apparently current with his present landlord and is not in arrears with regard to any other debts.
The defendant testified he has applied recently to F.R. Harres Company, Mohegan Sun, ITI, Integrated Technologies, IMGEN.
The applications by the defendant have been for positions entitled quality control technician.
It is the defendant's position that there are no jobs available in his area of expertise presently in Connecticut but that there are or may be prospects for employment with an office in Boston.
The defendant testified that his relationship with the witness Finn is one that has extended for a period of over 30 years.
As concerns the prospect for a position at Doncasters, the defendant indicated that his net from that position would be $400.00 a week, that he presently receives $382.00 unemployment compensation and presumably the difference was not a sufficient attraction.
The defendant acknowledged that there was the potential of an employment position in Boston.
The defendant testified that he was presently paying $50.00 a week for support plus 50% of any uncovered medical or dental expenses.
The defendant identified his area of expertise as that of a quality engineer.
The defendant is age 46.
As noted, he did have children issue of prior marriages.
The defendant, as indicated, disputes the plaintiff's position with regard to his immoderate use of spirits, testified that there was no CT Page 496 violence on the plaintiff's part during the marriage nor any substance abuse.
His education extended through completing high school and then technical training in quality control.
The defendant's testimony was to the effect that the title to the Shewville Road property was taken in 1993 from Gates and that in his words "there wouldn't be a home there now except he had lent his credit to the situation" with regard to financing.
The residence he described as a 2300 square foot expanded Cape home with a three-car garage and apparently a portion thereof set aside as an office.
The land apparently was cleared by the plaintiff and the defendant and the parties acted as general contractor.
The defendant did cost estimates and a modified floor plan. He supervised the plumbing and heating and apparently did considerable custom work on the residence including building a deck.
The defendant testified that he has varicose vein problems in his legs and an incipient hip problem.
The defendant indicated that he makes no request for alimony. He wants the aforementioned tools plus what were described as three tubs of hand tools.
The defendant's description of the property was that it was situated on a parcel that was 5.64 acres.
From the exhibits the court notes reference being made to Plaintiff's Exhibit B, the same consisting of two colored photographs showing a fairly substantial collection of containers of spirits.
From Plaintiff's Exhibit 1 the court notes the aforementioned agreement arrived by the plaintiff and the defendant with regard to joint legal and physical custody of the minor child Patrick.
The agreement will be set out verbatim in the subsequent orders of the court.
Defendant's Exhibit 1 is a photocopy of warranty deed Harry V. Gates and Carolyn Doll Gates to Bethany Gates Stout and James Mitchell Stout concerning the subject real estate on Shewville Road in Ledyard. The deed CT Page 497 is dated July 22, 1993 and recorded August 17, 1993 in the Ledyard land records.
Defendant's Exhibit 6 is a loan history statement from Homeside Landing Inc., reflecting various dates and payments of principal and interest and escrow with attendant late charges shown thereon.
See Plaintiff's Exhibit A, a statement from Balfour Beatty-MEC, Massachusetts Electric Construction Co., dated September 8, 2000, identifying the defendant as an independent consultant providing inspection services to BBC-MEC. This exhibit includes service invoices, reference being made to date of August 11, 2000 for 54 hours at the rate of $35.00 an hour, total amount $1,890.00, a draft payable to James Stout.
See also subsequent sheets in the same vein; August 20, 2000, $1,750.00; August 21, 2000 $1,820.00; August 28, 2000, $1,960.00.
See Plaintiff's Exhibit C, documents indicating a draft to James Stout on October 19, 1987 in the amount of $2,000.00; October 26, 1987, $22,000.00; various checks payable to Monmouth Way Escrow, Dime Savings Bank, and attendant Connecticut National Bank account statements; Monmouth Way Escrow account, $3,000.00, check dated October 24, 1987; Dime Savings Bank, December 7, 1987, $16,000.00; this check signed by Bethany Stout, the plaintiff. These figures apparently relate to the condominium in New Jersey.
See Plaintiff's Exhibit D, Uniform Residential Appraisal Report from the Riess Appraisal Company, dated November 17, 2000, concerning premises known as 675 Shewville Road in Ledyard. According to this exhibit appraisal report, the appraiser values the premises at $260,000.00.
See Plaintiff's Exhibit E, checking account of the plaintiff and the defendant from People's Bank indicating and setting forth various deposits, payments and credit card balances.
See Plaintiff's Exhibit F, settlement statement, as concerns the borrowers, plaintiff and defendant, from People's Bank regarding the premises at 675 Shewville Road in Ledyard. This exhibit reflects that the amount of the first mortgage loan on the property is to the amount of $187,500.00. This exhibit has appended thereto a Riess Appraisal Company report to the bank indicating that the market value of the property as of September 8, 1998 is $250,000.00.
See Plaintiff's Exhibit G, a matter pertaining to proceedings brought by the defendant's former spouse, Mary Alger, as concerns support CT Page 498 arrearages. The amount as of May 31, 1989 being $1,350.00.
See Plaintiff's Exhibit H, a handwritten statement with copies of checks attached thereto for the period August 1, 1988 through July 21, 1999 having to do with receipts and disbursements and the checks in support thereof issued by Bethany Stout. Some of these checks reflect that payments were made by the plaintiff to the defendant's former wife, Mary Ann Alger. A representative figure being $372.00 a month.
There are also photocopies of drafts issued from the joint accounts to a party by the name of Mary Ann Hasselman, apparently also in the nature of prior support obligations of the defendant.
According to the handwritten computations on the face of Plaintiff's Exhibit H, the amount of these disbursements to Alger, Bombassi or Hasselman amount to a total of $26,526.74.
See Plaintiff's Exhibit I, a pre-approval certificate issued by People's Bank directed to the plaintiff, Bethany Stout, with regard to refinancing as concerns 675 Shewville Road in Ledyard.
See Plaintiff's Exhibit J, sheets indicating disbursements from the defendant to the witness Finn in the amount of $450.00 or $489.00 for rent as concerns the premises presently occupied by the defendant.
See Plaintiff's Exhibit K, statement from People's Bank to the defendant concerning financial matters indicating the account number, current balances due, interest, if any, deposits and disbursements and the identification of the same. This covering the period June 15, 2000 to July 17, 2000.
From the dissolution of marriage form the court finds that the plaintiff's education extended through one year in college.
From the respective financial affidavits of the parties the court finds from the affidavit of the plaintiff that she is presently employed by a law firm now located in New London as a litigation legal secretary, that her gross weekly wage is $730.76, authorized deductions which appear appropriate for taxes and so forth, $172.77 for a net of $557.99. Weekly expenses as shown on the form amount to $948.35, which includes $75.00 a week for daycare for the minor child. The affidavit reflects personal debt, aside from mortgages, in the total amount of $17,000.00; this being credit card debt to MBNA and Household Credit.
The plaintiff values the real estate on Shewville Road at $260,000.00, mortgage at $194,000.00, for an equity of $66,000.00. CT Page 499
She shows a motor vehicle, a 1989 Oldsmobile, valued at $3,000.00, with a loan balance of $2,600.00; jewelry valued at $3,000.00; People's checking account, $600.00; 401K plan, $10,000.00; a lawn mower and tractor, $3,000.00; a horse, $5,000.00; and tools, $3,500.00.
From the defendant's financial affidavit the court notes that he is presently unemployed, receives $382.00 unemployment compensation, from which $57.00 is deducted, for a net of $325.00; weekly expenses of $874.42, including miscellaneous of $40.00. The statement reflects $155.00 a week for child support.
The defendant's affidavit reflects that he has debt, aside from mortgage obligations, to CitiBank Visa, $6,747.00 and Sears, $600.00, for a total of $7,347.00.
The defendant values the real estate on Shewville Road in the same manner as the plaintiff, $260,000.00; indicates mortgage debt of $204,540.00, for an equity of $55,460.00; shows a 1998 Jeep valued at $12,500.00 with a loan balance thereon of $15,800.00. for a minus equity; a 2001 Jeep valued at $23,108.00, loan balance, the same figure; People's Bank checking, $700.00; a 401K not vested, $15,000.00.
 Discussion 
This is a marriage of 13 years duration; the first for the plaintiff and the third for the defendant.
There is one minor child issue of this relationship who is presently age 5.
The issues as concerns custody are the subject of an agreement as reflected in Plaintiff's Exhibit 1 dated September 6, 2000.
The parties resided in two different locations, Saratoga Springs, New York and Clifton, New Jersey, prior to the present residence on Shewville Road in the town of Ledyard.
The plaintiff with the help of her parents initially put up the $24,000.00 with regard to the Clifton Park purchase which was subsequently sold at a loss.
The principle asset appears to be the real estate situated on Shewville Road in Ledyard. which property was conveyed to the plaintiff and the defendant by an appropriate deed from the plaintiff's father and stepmother. CT Page 500
No consideration was paid for this conveyance to the plaintiff and the defendant and the court is inclined to the view that the defendant's name appeared on the deed in order to provide strength for a subsequent mortgage application incident to the erection of a home on the property.
The existing debt on the property is quite substantial. The monthly payments on thy: first mortgage are $1,977.00 and on the second a further payment so that the total monthly mortgage indebtedness payments amount to approximately $2,500.00 a month.
There is an acknowledged arrearage as concerns prior order of support due from the defendant in the amount of $415.00.
As to the cause of the breakdown, it would appear that both of the parties are at fault. The plaintiff manifestly has been indiscreet with regard to a relationship with a friend. The court is inclined to the view however problems in the marriage are attributable, also in a very real way to problems that the defendant has with spirits.
The plaintiff has been regularly employed although her earnings are substantially less than that of the defendant when he is employed and her employment position at the moment looks fairly stable.
On the other side of the coin the defendant apparently is capable of substantial earnings. He is presently unemployed but the realistic prospects for future employment apparently exist with regard to a firm in Boston and the defendant has apparently been content to continue to receive his modest unemployment compensation and has not been motivated to actively get back into the workplace even if that were to require his having to travel or relocate as concerns prospective positions of employment.
The defendant has indicated that he is desirous of being relieved of the admittedly very heavy mortgage debt on the premises.
It would appear that to some extent the defendant has contributed to the improvement of the property with regard to various and sundry projects which were undertaken by him and executed with apparently some degree of skill.
The claimed equity in the Shewville Road property it would appear is attributable to the value ascribed to the land for which neither of the parties paid any consideration. The plaintiff's parent and stepparent understandably being desirous of helping the plaintiff out at that point in her life. CT Page 501
It appears quite clear that unless the outstanding mortgage debt is rewritten and spread out over a substantially longer period of time that the property may well be lost.
The only realistic prospects which appear on the horizon are the willingness of the plaintiff's parent and stepparent to financially help and assist her, possibly the help and assistance from her friend Parks and extending the terms and conditions of the mortgage indebtedness over a long period of time. It would appear otherwise that the property may well be lost, the defendant manifestly not being in a position where he can maintain, keep or preserve, particularly mindful of his current status of being unemployed.
There is also a factor which should be taken into account and that is the very substantial sums which were paid out admittedly of joint accounts but for which the plaintiff in no way was liable for support obligations of the defendant incident to prior marriages and children issue thereof.
Without the concern and dedication of the plaintiff with regard to making these various long-term payments, the defendant undoubtedly would have been in a contempt situation
The plaintiff's claim with regard to alimony was to the effect that she was desirous of having some such support for a short period of time in order that she might be able to refinance the real estate and get control of existing debt.
The defendant's position was that he made no claim for alimony payments.
The plaintiff also indicated that she made no claim against the defendant's existing retirement structure.
 The Law 
The court has considered all of the statutes which apply in matters of this nature which include without limitation Connecticut General Statutes (C.G.S.) § 46b-62 regarding attorney's fees, C.G.S. § 46b-82
regarding alimony and C.G.S. §§ 46b-55, 46b-83 and 46b-84 as concerns support.
The court has considered all of the applicable case law that govern the matter.
The court has considered the testimony of the parties, their candor or CT Page 502 lack thereof, and all exhibits and the arguments of counsel.
In considering the issue of alimony, the court has considered the length of the marriage, the cause of the breakdown and dissolution, the age, health, station, occupation and employability of each and the estate and needs of the parties.
The court has considered the standards of living of the parties.
As concerns the minor child, the court has considered the child's age, emotional ties to each parent, the length and intimacy of the association and the physical and mental health of the child.
The court has considered the agreement with regard to the parties sharing joint legal and physical custody of the child Patrick and the access and visitation schedule attendant thereto.
The court has considered the respective financial positions of the plaintiff and the defendant, their prospects for future income and opportunities.
The court has considered the issue of fault.
The Court enters the following orders.
As concerns the one minor child Patrick Stout, born November 13, 1995, the court adopts the agreement accepted by the parties with the help and assistance of Family Relations to the following effect: the plaintiff and the defendant shall share joint legal and physical custody of the child Patrick Stout.
During the school year the child will spend time with his parents on a four-week rotation, such that for the first three weeks he will be with his mother from Sunday evenings until Thursday evenings and with his father the remainder of the week. The schedule will be reversed during Week Four.
During the summer school vacation the child will be with his father from Sunday evening until Thursday evening the first three weeks of the rotation and with his mother the remainder of those weeks. The schedule is reversed during the fourth week of the summer rotation.
Each parent will have the option of two weeks uninterrupted vacation with Patrick with 30 days notice to the other parent of the selected dates of such vacation. CT Page 503
The parents will alternate the holidays.
The parents will spend other times with Patrick by mutual agreement.
This is a verbatim recitation of the agreement reached by the parties on September 6, 2000.
Mindful of the shared custody noted above and mindful of the defendant's present status of being unemployed, the defendant shall pay to the plaintiff the sum of $70.00 a week as support for the minor child. Until such time as the defendant secures new employment, the plaintiff shall maintain medical coverage for the minor child as available to her incident to her employment.
Any uncovered medical or dental expenses or matters of like nature shall be apportioned between the plaintiff and the defendant as follows: at this juncture 58% to be the responsibility of the plaintiff and 42% to be the responsibility of the defendant.
The defendant shall notify the plaintiff within ten days of his securing employment and advise as to the nature thereof and the amount to be received at which time the order as concerns support for the minor child shall be readdressed as will the issue as to uncovered medical and dental expenses.
If incident to prospects of employment the defendant has medical coverage available to him, he shall provide the same for the benefit and welfare of his minor son Patrick.
As concerns the marital home located at 675 Shewville Road in the town of Ledyard, the court directs that the defendant shall set over and convey to the plaintiff by an appropriate deed all of his right, title and interest in and to said property and the plaintiff shall assume and be responsible for any and all indebtedness as concerns said property including the two mortgages currently outstanding and shall hold the defendant harmless from any claim by any mortgagee or creditor.
The court enters this order as to the real estate mindful of the testimony indicating that the earlier residences of the plaintiff and the defendant, either in Saratoga Springs or Clifton Park, New Jersey, were secured and made possible due to the funds made available to the plaintiff by her father and stepmother in the amount of $24,000.00. A substantial portion of which was lost when the property was sold and further in consideration of the efforts and payments by the plaintiff on behalf of the defendant with regard to outstanding orders of support against him for his children issue of prior marriages, said sum being, CT Page 504 according to the testimony, either $37,330.00 or by virtue of the exhibits, $26,526.74, and also mindful of the fact that the acquisition of the real estate in the first instance as raw land was a gift from the plaintiff's father and stepmother and the value thereof, the same compromising 5.9 acres more or less.
The court entering this order with regard to the real estate does so from the perspective of believing that the only manner in which the premises can be saved, mindful of the extremely burdensome monthly mortgage payments, is for the same to be refinanced with help to the plaintiff either by the friend Parks or her father and stepmother. It would appear otherwise that the premises probably will be lost.
The defendant manifestly will be benefitted by being relieved of the debts and obligations attached to the real estate and manifestly is in no position to purchase the plaintiff's equity.
Under the circumstances existing, the court sees no necessity for the property to be sold which would deprive the plaintiff and the minor child of their home and defeat the intentions of the plaintiff's parent and stepparent.
On the basis of the testimony and the record, it appears that there is an arrearage for child support due from the defendant to the plaintiff in the amount of $415.00. The same to be paid within 60 days.
Each of the parties in the opinion of the court being at fault with regard to the breakdown of the marriage, the defendant by virtue of his resort to spirits and the plaintiff's indiscretion and current living arrangement with Parks, the court enters no alimony as to either party.
Each party shall be responsible for the debts reflected on their respective financial affidavits; the plaintiff for the MBNA debt of $11,500.00 and the Household Credit debt of $5,500.00; the defendant for the debt to CitiBank Visa of $6,747.00 and the Sears debt of $600.00.
The defendant shall be entitled to the red chair reflected on the list of personalty of the parties and all of the tools of his late grandfather.
As concerns the other tools reflected in the memorandum of decision acquired for the purpose of building the barn on the subject premises, the plaintiff may retain those tools that are specifically set forth for a period of five months for the purpose of completing the work incident to the erection of the ham on the subject premises. On the orderly expiration of the five months, the tools shall then be delivered over in CT Page 505 good order to the defendant to be his sole and separate property. This order as to the tools includes the reference to "three tubs" of various types of hand tools.
Manifestly the defendant has the ability to earn considerable sums and it is hoped that his current status of unemployment will not continue for an overly long period of time. That issue will be readdressed by virtue of the reference above of the obligation of the defendant to notify the plaintiff when he secures profitable employment.
The plaintiff may retain her 1989 Oldsmobile automobile, which has a modest equity, her jewelry and her People's Bank checking account showing a balance of $600.00.
The plaintiff may retain her 401K plan valued at $10,000.00 and the personal property shown in Category H on the financial affidavit including the tractor and her horse.
The defendant may retain the 1998 Jeep Cherokee, which has a minus equity, and the 2001 Jeep Cherokee which has no equity.
He may retain the personalty presently in his possession, his People's Bank checking account in the amount of $700.00 and he may retain the 401K plan valued at $15,000.00.
Each party will be responsible for their own attorney's fees.
The plaintiff shall undertake a course of conduct within the next 90 days looking toward the refinance of the subject home and residence on Shewville Road and achieving the result of relieving the defendant from any liability or responsibility thereon.
The court grants the relief prayed for.
The marriage of the parties is dissolved and the parties are declared to be single and unmarried pursuant to the provision of the statute.
Austin, JTR